THEODORE P. SCHURR v. FRANK W. SAVIGNY AND
HENRY CHRISTMAS.

*Master and servant—Contract—Custom—Extra work—Statute
of 1885.*

1. Act No. 137, Laws of 1885, making ten hours a legal day's work,
   does not apply to a contract with an expert in taking, finish-
   ing, and retouching photographs, or to service or employment
   under a hiring by the week, month, or year.[1]

2. To permit a custom to govern and modify the law in relation
   to the dealings of parties in any case, it must be uniform, cer-
   tain, and sufficiently notorious to warrant the legal presump-
   tion that the parties contracted with reference to it.[2]

3. The existence of an express contract for hire for one year, at a
   stated weekly compensation, excludes any implied agreement
   or understanding about wages, and the contract price cannot
   be increased without a further agreement to that effect between
   the parties.

   So *held*, where the employé under such a contract, after the
   expiration of the year, sought to recover for extra work, and
   double compensation for two weeks allowed to him for a vaca-
   tion, but of which he did not avail himself.

Frror to Ingham. (Peck, J.) Argued January 6, 1891.
Decided April 17, 1891.

*Assumpsit.* Defendants bring error. Judgment reversed,
and one entered for costs in favor of defendants, and for
$40 in favor of plaintiff, being the amount tendered him
by defendants. The facts are stated in the opinion.

*Russell C. Ostrander,* for appellants.

*Frank L. Dodge,* for plaintiff.

LONG, J. Plaintiff entered into defendants' employ on

---

[1] See *Bartlett v. Street Railway Co.*, 82 Mich. 658.
[2] See *Lamb v. Henderson*, 63 Mich. 302; *Stringfield v. Vivian*, Id.
681; *Kieldsen v. Wilson*, 77 Id. 45; *Black v. Ashley*, 80 Id. 90.

September 15, 1888, under a contract of employment for one year.

The defendants are the owners and proprietors of a photograph gallery at Lansing, this State, and employed plaintiff as an operator therein. The contract of employment is made up of several letters passing between the parties, the plaintiff at the time of entering into it residing at Indianapolis, Ind. There is no contention as to what the contract is, or the time of its continuance. It was for one year, at $20 per week. Plaintiff continued in the service of defendants for the full time, and was paid in full for his services except the last two weeks before the expiration of the time. At that time he called upon the defendants for his pay, and was put off until the next day. On that day the $40 was tendered him, and he was then asked to sign a receipt in full, which he refused to do. A few days thereafter the plaintiff's attorney presented a claim to the defendants not only for the $40 remaining unpaid under the contract, but for extra time, being for work done on Sundays during the year, two weeks' time for work done for which plaintiff was to be allowed a vacation, etc., and extra work done in the evenings. Payment of the demand being refused, this action was brought in the Ingham circuit court to recover for this extra work. On the trial the plaintiff had verdict and judgment for $245.15. Defendants bring error.

The bill of particulars filed in the cause is as follows:

50 extra days' work and labor of plaintiff for the defendants at $3.31 per day, from on or about September 15, 1888, to September 15, 1889_____ $165 50

Two weeks' time as per agreement for work done and labor of plaintiff for the defendants at $20 per week_____ 40 00

Work and labor of plaintiff for the defendants, 30

85 MICH—10.

| | |
|---|---:|
| evenings, between September 15, 1888, and September 15, 1889, at $2 per evening | 60 00 |
| Two weeks' time, at $20 per week, to be allowed by defendants to plaintiff as a vacation, as per agreement, for work and labor | 40 00 |
| | $305 50 |

The first item was for Sunday work, and was stricken out by the court at the close of the plaintiff's testimony. Plaintiff was then allowed to amend his bill of particulars, and make claim for about 300 evenings' work at 60 cents an evening. He was then recalled, and permitted to testify that he had worked almost every evening during the year, and testified to the value of such services. He also testified that he worked during the two weeks' time for which he was to have a vacation. It was not contended in the trial court, and is not contended here, that there was any express agreement that he should have pay for such extra time; but it is contended that from the day the plaintiff commenced to work to the day he was discharged he had not only worked six working days each and every week, but had worked nearly each week-day evening from after tea until 8 or 9 o'clock, and had also worked during the two weeks in which he was entitled to his vacation. It is claimed from this that the plaintiff was entitled to recover for such extra time, though no express agreement to be compensated therefor was shown. The claim is—

1. That the statute of this State fixed the number of hours which constitute a day's work in this particular kind of business, as well as all other kinds of business that are not by this statute or by contract exempted from its application. Act No. 137, Laws of 1885.

2. That, though this statute did not exist, there would be an implied agreement under the facts of this case to pay for such services, as it was shown by the plaintiff and all the leading photographers of Lansing who have

had experience that it was customary to pay for overtime when performed in the evening or night-time; and that the court was not in error in so charging the jury, and also in directing the jury that, if they found that the salary was to go on during the vacation by the terms of the agreement, the plaintiff would have a right to recover for his services during that time.

We are satisfied—

1. That the statute above cited has no application to this kind of employment. Section 1 provides—

"That in all factories, work-shops, salt-blocks, saw-mills, logging or lumber camps, booms or drives, mines, or other places used for mechanical, manufacturing, or other purposes within the State of Michigan, where men or women are employed, ten hours per day shall constitute a legal day's work, and any proprietor, stockholder, manager, clerk, foreman, or other employers of labor who shall require any person or persons in their employ to perform more than ten hours per day shall be compelled to pay such employés for all overtime or extra hours at the regular *per diem* rate, unless there be an agreement to the contrary."

It is provided by section 5 that—

"Nothing in this act shall be construed to apply to domestic or farm laborers, or other laborers who agree to work more than ten hours per day."

The contract of employment in this case does not specify the number of hours to be considered a day's work. The employment was not by the day or week, but by the year, at $20 per week. The plaintiff was employed as an expert in taking, finishing, and retouching photographs. It is a matter of general knowledge that in the printing of photographs the work of bringing them out and retouching must greatly depend on the character of the weather, as sunlight is one of the essential elements in conducting all such business; and it is to be presumed that the work was not continued day by day when each and every hour could be profitably employed. The work of necessity

must be fluctuating, dependent upon the custom which the business might be able to bring, and which is shown by the record would at times be irregular, increasing during certain seasons of the year, especially at and on all holidays, and at other times falling off, when the work and trade would be dull. This statute was not intended by the Legislature to apply to this character of service, or to service or employment such as the hiring by the week, month, or year. If the statute could be so applied, then in every store where clerks are employed at irregular hours, domestics in families, and in other employments of like character, such employment would fall within its provisions. The statute was intended to and does apply to factories, work-shops, saw-mills, logging and lumbering camps, booms, drives on the rivers, mines, and such places where the mechanical and manufacturing industries of this kind are carried on. The fact that section 5 of the act expressly exempts domestics and farm laborers from its operation does not imply that such labor as here performed should fall within the provisions of the act.

2. There is no evidence in the case which warranted the court in instructing the jury that if the plaintiff did work beyond the statutory number of hours, or an unreasonable length of time during the day, and beyond what is provided for in this contract, and did that work at the request of the defendants, then the defendants would be liable to him for the value of such work as for extra or over work, as there is nothing in the case showing or tending to show any promise or agreement on the part of the defendants to pay for such extra work or overwork, and there is no such custom shown in the case as would entitle the plaintiff to recover for such extra work. To permit the custom to govern and modify the law in relation to the dealings of parties in any case, it

must be uniform, certain, and sufficiently notorious to warrant the legal presumption that the parties made their contract with reference to such custom. *Bank v. Grafflin*, 31 Md. 507; *Smith v. Gibbs*, 44 N. H. 335; *Harper v. Pound*, 10 Ind. 32; *Benjamin v. Publishing Co.*, 11 N. Y. Supp. 208; *Moffat v. City of Brooklyn*, 1 Id. 781. A usage or custom of so doubtful authority as to be known only to a few can never be regarded. To make it at all obligatory it must be generally known, certain, and reasonable. *Collins v. Hope*, 3 Wash. C. C. 150.

The plaintiff called several photographers of Lansing, who testified as to the custom of work in that business in Lansing. The testimony need not be set out here, but it may be remarked that it falls far short of showing any such general, uniform, and certain custom as to the number of hours which should constitute a day's work at that particular kind of business, so that it could be said that the parties contracted with reference to such custom or usage, and impliedly agreed that the plaintiff should be paid for his evenings' work, beyond the price agreed upon between the parties.

3. The court was in error in directing the jury that the plaintiff was entitled to recover for the two weeks' employment during which time he might have taken his vacation. It appears from the record that he was paid $20 per week for these two weeks, and there is nothing in the contract of employment by which it can be implied that the plaintiff should receive double compensation for two weeks' time during the year.

The contract between the parties was an express one, covering the entire matter. There was therefore no room for any implied agreement or understanding about wages, and the contract price could not be increased without some further agreement between the parties to that effect. It appears that the plaintiff entered upon such employ-

ment under an express contract at $20 per week. He was paid, week by week, the full contract price during the entire year, except the last two weeks, and during the whole time it is conceded that he made no claim or demand upon the defendants for extra compensation until the close of his employment and discharge from the service of the defendants, when for the first time, and after the claim had been put into the hands of his attorney, was any claim made that he intended to hold the defendants liable for extra evenings' work, or double compensation by reason of the agreement for the two weeks' vacation.

It appears that at the close of the testimony defendants' counsel requested the court to charge the jury—

"There is no proof tending to show an express promise by defendants to pay the plaintiff anything for overtime, even if the plaintiff did work for the defendants more hours and more time than he could have been required to labor reasonably by the terms of his contract. A servant cannot be required to labor an unreasonable number of hours, but if the servant does labor an unreasonable number of hours, or more than he has contracted to do, * * * he cannot recover extra payment unless there is an express promise to pay him therefor."

The court was also asked to instruct the jury:

"If you find that the defendants refused to allow the plaintiff the two weeks' vacation, still the plaintiff cannot recover for this failure, it appearing that he was paid the usual wages for those two weeks."

The court refused to give these instructions to the jury. This was error, as it appears that the plaintiff remained there voluntarily, and performed services for which he was paid, and did not call for his vacation, nor make any claim thereto until after his time of employment ended. The defendants, under the facts shown by this record, were entitled to these instructions.

It appearing from the record that the defendants tendered the plaintiff all that there was due under the contract before this suit was commenced, the court should have directed the verdict for the defendants.

The judgment of the court below must be reversed, and judgment entered in this Court in favor of the defendants for the costs of both courts. The plaintiff is, however, awarded judgment in this Court for the $40 tendered him by the defendants.

The other Justices concurred.