## BOUGHTON *v.* BOUGHTON'S ESTATE.

ESTATES OF DECEDENTS—CLAIM FOR SERVICES—PRESUMPTION.

> The presumption that washing, rooms, lights, fuel, and attendance, furnished to a decedent by one claiming compensation therefor against his estate, were gratuities, arising from the fact that the claimant was the daughter-in-law of decedent, and that he lived with her and her husband as a member of the family, is not overcome by evidence that there was an express agreement by him to pay for board.

Error to Bay; Maxwell, J. Submitted November 11, 1896. Decided December 1, 1896.

Mary E. Boughton presented a claim against the estate of Darius Boughton, deceased. The claim was allowed in part by the commissioners, and Griffith H. Francis, administrator with the will annexed, on the application of

Darius F. Boughton, a legatee and heir at law, appealed. From a judgment for claimant, the administrator brings error.    Reversed.

*H. H. & C. H. Hatch*, for appellant.

*L. G. Willcox* and *George P. Cobb*, for appellee.

GRANT, J.    The claimant was the daughter-in-law of the deceased, whose wife died in September, 1886.    After her death deceased lived with his son, John C. Boughton, the husband of claimant.    The deceased was possessed of some means, and he paid his son three dollars per week for board.    John C. Boughton died in May, 1894, and Darius died six weeks thereafter.    The claim presented against the estate was as follows:

> Board of Darius Boughton from May 14, 1894, to June
>   26, 1894, 6 weeks, at $3 per week_____    $18
> Washing for said Darius Boughton from Sept. 6, 1886,
>   to June 26, 1894, 406 weeks, at 50 cents per week\_\_\_\_    203
> Rooms, extra lights, fuel, and attendance furnished
>   said Darius Boughton from Sept. 6, 1886, to June 26,
>   1894, 406 weeks, at $3 per week_____    1,218

The case was submitted to the jury upon the theory that there was testimony from which a contract to pay might be implied, and verdict and judgment were rendered for the claimant.    The item for board is conceded, but it is insisted that there is no testimony upon which to base an implied contract to pay for. the other items. The deceased lived with his son and daughter as a member of the family, and was treated as such.    There is nothing, aside from the payment of board, to indicate that there existed any other relation.    The agreement to pay so much a week for "board" excluded any implication to pay for any other services which naturally come within that term.    There is no testimony to indicate that a word was ever said to the deceased by his son or the claimant that he was expected to pay anything more than the stipulated weekly amount.    No contract can be implied

where the express contract, in substance, covers the same subject-matter. *Schurr* v. *Savigny*, 85 Mich. 144. In order to bind the estate of the deceased, it was incumbent upon the claimant to prove that the deceased knew that Mrs. Boughton intended to charge him for the items for which she now claims, and that he assented to the arrangement. *Mason* v. *Dunbar*, 43 Mich. 407 (38 Am. Rep. 201). Not only is there no testimony to show the existence of such an arrangement, but the claimant herself shows that any such intent was purposely kept from him. She testified that something was at one time said between herself and her husband about her making a claim against the estate. She said:

"The care of the old gentleman was such that I often told my husband it was no compensation, and my husband said 'No,' but that after grandpa died he wanted a claim made. My husband did not want to hurt grandpa's feelings. Grandpa did not realize that he was a care. * * * My husband said that he did not want to speak about it, because his father would feel hurt. The old gentleman did not realize that he was a care. I cannot recollect that anything else was said upon the subject."

The mere fact that a father, living with his son, contributed something out of his own means as a compensation for his support, is not sufficient to negative the existence of the family relation, and open the door to speculation as to whether there was an agreement to pay such further compensation for maintenance as a jury might think the equities of the case justified.

The judgment is reversed, and, inasmuch as no different state of affairs can be shown to exist upon a new trial, none will be ordered. Judgment will be entered in this court for the amount of the board, $18, and interest. The estate will recover the costs of both courts.

Long, C. J., Montgomery and Hooker, JJ., concurred. Moore, J., did not sit.