ENGQUIST v LIVINGSTON COUNTY

Docket No. 63474. Submitted April 6, 1983, at Lansing.—Decided December 3, 1984. Leave to appeal applied for.

Plaintiffs, Margaret Engquist, M. Virginia Kennedy and others, were employees of defendant Livingston County in 1975, when the Board of County Commissioners, in an effort to avert a financial crisis, adopted a salary schedule for 1976 which granted an increase for all employees but which suspended the granting of all step increases. Salary step increases in various forms had been part of the county's wage plans since 1961. Plaintiffs brought an action against the county and the Board of County Commissioners to prevent suspension of the step increases. In July 1977 the board adopted a new step increase system. The trial of this matter commenced in 1978, and was adjourned at the close of plaintiffs' proofs. The Livingston Circuit Court, Paul R. Mahinske, J., thereafter granted a judgment in favor of the plaintiffs, finding that the defendants had breached implied contractual obligations to plaintiffs by withholding the step increases between January 1, 1976, and July 1, 1977. Defendants appealed. *Held:*

1. The trial court erred in holding that the county's history of using step increases created a contractual right in the employees to continued application of the step increases. In order for such contractual rights to arise the employees must have a legitimate, reasonable expectation of employer policy. In this case, the salary classifications and step increases had been altered and revised periodically such that no employee could have a legitimate expectation of receiving future step increases.

2. The board's decision was not arbitrary, capricious or unreasonable. The decision complied with requirements of substantive due process.

3. Public employment is not a property interest which entitles an employee to procedural due process when an employ-

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur 2d, Master and Servant § 14 *et seq.*
[2] 48A Am Jur 2d, Labor and Labor Relations § 1764 *et seq.*
63A Am Jur 2d, Public Officers and Employees § 8.

ment interest is affected. Thus, the board did not have to afford the employees procedural due process.

4. Defendants' other allegations of error are without merit.

Reversed.

1. LABOR RELATIONS — STATEMENTS OF POLICY — EMPLOYEES' RIGHTS.

Statements by an employer of company policy and procedure raising legitimate expectations on the part of employees can give rise to rights enforceable in contract on behalf of those employees; such expectations must be legitimate or reasonable, and are not legitimate where employees understand that personnel policies are subject to unilateral changes by the employer.

2. LABOR RELATIONS — PUBLIC EMPLOYMENT — PROPERTY RIGHTS — DUE PROCESS.

Public employment in and of itself is not a property interest automatically entitling an employee to procedural due process when the public employer suspends an employment interest; such a property right is one which derives from a contract or statute.

*Lavan, Hegarty & Harris* (by *Michael K. Hegarty*), for plaintiffs.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *David R. Fernstrum* and *Douglas W. VanEssen*), for defendants.

Before: DANHOF, C.J., and D. E. HOLBROOK, JR., and HOOD, JJ.

D. E. HOLBROOK, JR., J. Defendants appeal as of right from a final order of judgment entered against them on May 24, 1982.

On August 15, 1961, the Livingston County Board of Supervisors (now Commissioners) adopted a compensation plan known as "The Johnson Plan". The plan provided that county employees should receive "step increases" in salary at regular intervals based upon seniority, if recommended by their department heads. The plan also provided

that salary grades and schedules be subject to future revision by the board. Between 1961 and 1975 the salary schedule was amended several times to increase employee salaries. Moreover, new classifications were added and the number of steps and grades was changed.

During the preparation of the budget for 1976, the board believed that the county had a fund deficit of greater than $200,000. The board therefore considered various alternatives to reduce the 1976 budget. Included among the alternatives considered were several methods of cutting county employees' salaries. The board's budget hearings, held in October through December, 1975, were announced and open to the public. On December 16, 1975, the board adopted a salary schedule which provided for a 5 percent increase in salary for all employees, but which suspended the granting of all step increases. This plan was to be effective on January 1, 1976, and was incorporated into the county's 1976 budget.

On December 24, 1975, plaintiffs, non-unionized employees of Livingston County, filed a complaint commencing the present action. Upon the filing of said complaint an *ex parte* restraining order was issued prohibiting suspension of the step increase system. Said order was set aside by this Court on January 16, 1976. On January 9, 1976, defendants filed a motion for disqualification of the Livingston County circuit judges due to alleged personal bias and prejudice. Said motion was denied by the trial court on January 26, 1976.

On July 5, 1977, defendant board adopted a new step increase system.

Trial on this matter was commenced on June 8, 1978. At the close of plaintiffs' proofs, defendants moved for dismissal. The motion was taken under advisement and the hearing adjourned. On Octo-

ber 16, 1980, the trial court issued an opinion finding in plaintiffs' favor, before defendant had presented any proofs. The court found that defendants had improperly and without valid justification withheld the step increases from plaintiffs for the period of January 1, 1976, to July 1, 1977. Thereafter, in lieu of presentation of additional testimony in the case by defendants, the parties entered into a stipulation regarding the historical background of the case. On February 2, 1982, upon review of the stipulation, the trial court issued a second opinion re-affirming its original findings. On May 24, 1982, final judgment was entered and from this judgment defendants appeal as of right.

Defendants first claim that the trial court erred in finding that the county had breached implied contractual obligations to plaintiffs in suspending the step increases from January 1, 1976, to July 1, 1977. We agree. In *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), the Supreme Court held that statements by employers of company policy and procedure raising legitimate expectations on the part of employees could give rise to rights enforceable in contract on behalf of said employees. The trial court, in reliance on *Toussaint,* found that the county's implementation of the "Johnson Plan" and said plan's use of the scheme of step increases for 14 years created rights enforceable in contract on behalf of the plaintiffs for the continued application of the same standards.

Assuming, *arguendo,* that *Toussaint* applied herein, we would find that the present case falls within *Toussaint's* own exception. *Toussaint* focuses upon the expectations of the employee but said expectations must be legitimate or reasonable. *Toussaint, supra,* p 598. Such expectations are not legitimate where employees understand that per-

sonnel policies are subject to unilateral changes by the employer. *Toussaint, supra,* p 619. In the instant case, the step increase structure was significantly revised at least five times between 1967 and 1974. Those revisions entailed either a significant reclassification of employees in various grades or an alteration in the number of steps. Additionally, on at least four occasions during said period, the board uniformly elevated everyone one step regardless of whether they were entitled to same in that particular year. Therefore, the step increase had a history of being unilaterally revised by the board. In other words, no employee could reasonably expect to be in the same classification from year to year nor could any employee expect to advance to a higher step since the number of steps in each classification was constantly being revised. Accordingly, even under *Toussaint* the employees could not have had a legitimate expectation of future step increases.[1]

We further find that suspension of the step increase system in 1976 comported with all applicable requirements of due process. Our review of the record reveals that the board was faced with a large anticipated county fund deficit; a large portion of county expenditures were devoted to salaries; extensive cuts were made in the area of county services; and the board was legally bound to balance the budget. In view of the above, the board's decision to suspend the step increase plan was not arbitrary, capricious or unreasonable but complied with substantive due process. *McAvoy v H B Sherman Co,* 401 Mich 419, 435-436; 258 NW2d 414 (1977). Moreover, a public employer need not comply with procedural due process in suspending an employment interest unless a public

---

[1] No case has yet established that *Toussaint* applies to public employees.

employee has a "property right" in that interest. *Bishop v Wood,* 426 US 341, 347; 96 S Ct 2074; 48 L Ed 2d 684 (1976); *Scott v Ann Arbor,* 76 Mich App 535; 257 NW2d 157 (1977). A property right emanates from a contract or statute; public employment in and of itself is not a property interest automatically entitling an employee to procedural due process. *Board of Regents v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 (1972); *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972). Plaintiffs have not shown a statutory right to the step increase plan and, as decided earlier, neither do plaintiffs have a contractual right. Accordingly, we hold that the board did not have to afford procedural due process in suspending the step increases since no "property right" existed.

Defendants' remaining allegations of error have been reviewed and are found either to be without merit or discussion thereof found to be unnecessary. See *Dickerson v Warden, Marquette Prison,* 99 Mich App 630, 641; 298 NW2d 841 (1980); GCR 1963, 912.2(2).[2]

Reversed.

---

[2] A ruling by this Court on appellants' issue that the trial judge erred in failing to disqualify himself because of personal bias or prejudice is unnecessary and in effect moot in view of our disposition coupled with the fact that the trial judge is no longer on the bench and any retrial would of necessity be before a different judge.